# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6420 | **DATE** | 5/15/2003 |
| **CASE TITLE** | USA vs. Edward Bontkowski | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court denies Petitioner's motion for discovery [7-1] pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAY 19 2003 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 23 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 5/15/2003 date mailed notice | |
| DK | courtroom deputy's initials | FILED FOR DOCKETING 03 MAY 16 PM 12: 28 Date/time received in central Clerk's Office | DK mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 02 C 6420 |
| ) | Related to Case No. 97 CR 295 |
| EDWARD BONTKOWSKI, ) | |
| ) | Magistrate Judge Morton Denlow |
| Defendant. ) | |

DOCKETED
MAY 1 9 2003

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the Court on Edward Bontkowski's ("Petitioner" or "Bontkowski") motion for discovery pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts. Bontkowski's 28 U.S.C. § 2255 motion to vacate his convictions and sentence is before Judge Ronald A. Guzman. The § 2255 motion includes seven grounds for relief; however, Petitioner asks for discovery relating primarily to the sixth ground, factual innocence on the witness intimidation charge. For the reasons stated herein, Bontkowski's motion for discovery is denied.

### II. FACTUAL BACKGROUND

#### A. Procedural History

On June 10, 1999, a jury convicted Bontkowski of twenty criminal counts including: wire fraud, mail fraud, failure to file federal income tax returns, tax evasion, and witness

23

intimidation. On June, 30, 1999, Bontkowski filed a post-trial motion seeking arrest of the judgment or a new trial. In August of 1999, Bontkowski requested and was granted the withdrawal of his trial attorney. He then chose to represent himself. Bontkowski's post-trial motion for arrest of the judgment or a new trial was denied, except for an ineffective assistance of counsel claim that was continued.

On October 29, 1999, Bontkowski filed a renewed motion for new trial alleging discovery violations and knowing use of perjured testimony by the government. After a supplemental submission in support of the renewed motion in November, the district court denied the motion on December 15, 1999. In late December 1999, Bontkowski filed a motion for clarification and reconsideration of the denial raising the same issues as the motion itself. Again, he filed a supplemental submission to his motion for clarification. The court denied Bontkowski's motion for clarification or reconsideration in January 2000 stating, "there was no improper non-disclosure." January 5, 2000 Order.

In March 2000, Bontkowski filed a supplemental submission in support of his ineffective assistance of counsel claim. The court denied this claim in May 2000, and Bontkowski proceeded to represent himself at the sentencing hearing. He was sentenced to 108 months of prison, three years of supervised release, and ordered to pay $314,370 in restitution.

Bontkowski filed a pro se notice of appeal. The Seventh Circuit set a briefing schedule requiring his opening brief to be filed by February 20, 2001 and reply by April 3,

2001. At the beginning of February, Bontkowski filed a motion to amend the briefing schedule which was granted, giving him until March 22, 2001 to file his opening brief and until May 7, 2001 to file a reply. Bontkowski then filed a motion asking for the reconsideration of the briefing schedule. Bontkowski was then given until April 5, 2001 to file an opening brief and May 21, 2001 to file a reply. Throughout this time the court reporter sought two extension of time to file the transcript, both of which were granted.

In late March, Bontkowski filed a third request seeking an extension of time for the briefing schedule. His motion was granted and he was permitted until May 7, 2001 to file an opening brief and June 20, 2001 to file a reply. On April 17, 2001 Bontkowski filed a motion to file an oversized brief. One day later he filed a motion for a fourth extension of time on the briefing schedule. The court granted his motion to file an oversized brief and extended the deadline to June 6, 2001 for the opening brief and July 20, 2001 for a reply.

On June 5, 2001, Bontkowski filed his fifth request for an extension of time. The motion was granted, and he was given until June 27, 2001 to file the opening brief and August 10, 2001 to file a reply. On June 22, 2001, Bontkowski filed his sixth request for an extension of time. This request was also granted, giving Bontkowski until July 18, 2001 to file an opening brief and August 31, 2001 to file a reply. The court also stated, "No further extensions of time will be granted for the appellant." On July 17, 2001, Bontkowski filed his seventh request for an extension which was also granted, allowing him to file his opening brief by July 30, 2001. In this final order of July 20, 2001 the court stated, "Absolutely no

further extensions of time will be granted to appellant. This appeal will be dismissed pursuant to Cir. R. 31(c) if the appellant fails to tender his opening brief by the due date as extended."

Finally, on September 6, 2001, Bontkowski filed a motion to file his brief instanter. The court responded on September 10, 2001, denying his motion and dismissing the appeal for failure to prosecute. Bontkowski replied with a motion to reconsider which was denied and a motion to recall the mandate which was also denied. He then filed notice of his writ of certiorari to the Supreme Court, and in January 2002 he filed a petition for writ of mandamus with the Supreme Court seeking reinstatement of his appeal. His petition was rejected.

In August of 2002, Bontkowski filed a civil action in the United States District Court for the Middle District of Florida naming 21 Seventh Circuit and Northern District of Illinois judges as defendants. This complaint alleges those named, and others, conspired "in an orchestrated campaign in singling out Plaintiff out of sheer vindictiveness, in retaliation for Plaintiff having exercised his rights under the Constitution and the laws of the United States . . . ."

The current 28 U.S.C. § 2255 motion was filed in September of 2002. Bontkowski alleges seven grounds on which his convictions and sentence may be vacated. Of the seven, the sixth comprises fifteen pages of his memorandum of law in support of the § 2255 motion. The sixth ground to vacate is "Defendant's claims that he is actually innocent of the witness

4

intimidation charge alleged in count-21 and that he has been unconstitutionally railroaded into prison by the trial judge entering mendacious evidentiary rulings and aiding and abetting the government to perpetrate a fraud upon the jury and by the trial judge's actions in entering flagitious orders in denying defendant's motions for a new trial in concealing the government's fraud contrary to the following well established principles of law." Bontkowski's motion requesting discovery focuses on this ground; thus, the Court will focus here also.

## B. The Facts Regarding Petitioner's Claims

Despite the verbose nature of Bontkowski's claims, it appears throughout his § 2255 motion and his motion for discovery that he is claiming abuse of the discovery process and that he is actually innocent of the witness intimidation charge. The Court will recite his arguments to the degree they can be synthesized from his briefs. The witness intimidation charge involved William Randall ("Randall"). Bontkowski claims that there is good reason to believe that the testimony of Randall at trial was not credible because he was a "drunken lunatic." Specifically, Randall reported to FBI Agent Brian Smith ("Agent Smith") on January 23, 1998 that Bontkowski appeared in his garage. Smith testified that he contacted the Bloomingdale Police Department at 8:40 p.m. on January 23, 1998 indicating that he had received a threat against a federal witness, hoping that Bloomingdale police could respond more quickly if needed. The Bloomingdale police have no record of being contacted by Agent Smith at 8:40 p.m. The Bloomingdale police do have a record of being contacted at

5

9:20 that evening by the Chicago office of the FBI instructing Sargent Jasper to issue a watch for Randall's address because Bontkowski may appear there. Agent Smith went to Randall's garage at 9:51 p.m. that evening to speak with Randall. Randall later testified that he was drunk and passed out that evening.

In addition, Randall reported being threatened and assaulted on March 29, 1998 by Tommy and Tony Gonzalez. At that time Tommy Gonzalez was confined in the Cook County Jail, and Tony Gonzalez had been dead for approximately five years (he died in 1993). Randall reported the threats to the Bloomingdale Police Department, and these threats are somehow related to this case. Bontkowski alleges that FBI-302 report dated April 2, 1998 and two Bloomingdale police reports indicate that Randall had filed false reports of witness intimidation.

After being asked leading questions on direct examination at trial, Randall testified that he had been threatened by Bontkowski on January 23, 1998 while he had been drinking heavily in his garage, "if he wasn't dreaming." When he was asked if he spoke with FBI agents on January 23, 1998, Randall testified "I really can't remember I got totally drunk, sir. I really can't recall right now, sir, if I talked to them afterwards or not." Randall also testified about the incident, "I might have dreamt all that, got drunk and passed out and dreamt it." Agent Smith was also permitted to testify about what Randall stated to him that evening. Another FBI Agent, Agent Kacoyannakis, testified that during the conversation with Randall that evening, Randall was slurring his words and may have had something to

drink.

## C. Petitioner's Grounds For His 28 U.S.C. § 2255 Motion

Bontkowski claims several problems with the witness intimidation incident. First, he claims that the trial judge should have known she was authorized and should have ordered Randall to obtain a psychiatric evaluation revealing his alleged Korsakoff's Psychosis because his statements to the FBI indicate the presence of confabulation, an alcohol-related phenomenon. Second, the government violated an order of the court requiring it to produce all discovery materials to Bontkowski's trial attorney that it had provided to Bontkowski's previous attorneys. Specifically, he alleges that the FBI-302 report and the Bloomingdale Police reports are exculpatory evidence that were not provided to his trial counsel by the government. Third, Bontkowski alleges that the government suborned perjury by knowingly using the perjured testimony of Agent Smith who stated that he called the Bloomingdale police at 8:40 p.m. January 23, 1998–not at 9:20 p.m. Fourth, the government asked leading questions of Randall on direct examination, over defense objections, which led to his statements that he was threatened and spoke with the FBI agents on the evening of January 23, 1998. Fifth, after Randall testified that he was in fact afraid of Bontkowski and defense counsel asked if Bontkowski had ever beat him up or shot him, the trial judge, in error, permitted the government to ask Randall about a time in which he witnessed Bontkowski beat up another man with a two-by-four because defense questions opened the door to this evidence. The admission of this evidence was in violation of Federal Rule of Evidence

404(b). Sixth, the trial judge erred in allowing Agent Smith to testify to what Randall stated to him on January 23, 1998, bolstering Randall's credibility over defense objections and under Federal Rule of Evidence 801(d)(1)(B). Seventh, Agent Smith was permitted to "vouch" for Randall's credibility by offering his personal beliefs about Randall's credibility.

### III. DISCUSSION

Review of § 2255 and related motions is of significant importance as "[t]here is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that . . . he is deprived of his freedom contrary to law." *Harris v. Nelson*, 394 U.S. 286, 292 (1969).

A § 2255 petitioner is not permitted discovery as a matter of course as in ordinary civil litigation. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, "[a] party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." R. 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Good cause will be found where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief. . . . " *Bracy*, 520 U.S. at 908-09 (quoting *Harris*, 394 U.S. at 300); *Brown-Bey v. United States*, 720 F.2d 467, 471

(7th Cir. 1983) (applying the similarly worded Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts). The decision to grant discovery is left to the sound discretion of the district court, but a blanket denial is an abuse of discretion if the discovery is "indispensable to a fair, rounded, development of the material facts." *United States ex rel. Shores v. Warden, Pontiac Corr. Ctr.*, No. 95 C 3932, 1996 WL 341390, at *7 (N.D. Ill. June 18, 1996) (internal quotations omitted) (quoting *East v. Scott*, 55 F.3d 996, 1001 (5th Cir. 1995)).

In this case, the government urges that there is no good cause to allow discovery because Bontkowski's claims are procedurally barred due to his failure to raise these issues on direct appeal. Bontkowski responds that although he failed to appeal, his § 2255 motion is not procedurally barred because there has been a fundamental miscarriage of justice. The Court will first address the procedural bar issue.

A.  **Bontkowski Is Procedurally Barred From Raising His Claim For The First Time In His § 2255 Motion.**

Generally, a § 2255 motion is not a substitute for a direct appeal. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). Thus, constitutional errors not raised on the direct appeal are procedurally barred unless the defendant can show cause for not raising them at appeal and actual prejudice resulting from failing to raise them. *Id.* Cause means that the failure to appeal or the omission was not the fault of the petitioner. *Wright v. Clark*, 96 F. Supp. 2d 757, 759 (N.D. Ill. 2000). Prejudice means that the outcome would have been different had the mistake or omission not been made. *Id.* Non-constitutional claims which

9

were not raised on appeal are barred regardless of cause and prejudice. *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997).

In addition, the petitioner may assert his claims for the first time in a § 2255 motion, despite a procedural bar, if the "district court's refusal to consider the claims would lead to a fundamental miscarriage of justice." *Id.* at 705; *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000). A fundamental miscarriage of justice occurs when a constitutional violation "has probably resulted in the conviction of one who is actually innocent." *United States v. Evans*, 123 F. Supp. 2d 1122, 1125 (N.D. Ill. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Thus, the petitioner must make a claim of actual innocence, as opposed to legal innocence, to make out a claim that there has been a fundamental miscarriage of justice. *Boyer v. United States*, 55 F.3d 296, 300 (7th Cir. 1995).

**1. Petitioner can not show cause and prejudice.**

Here, Bontkowski appears to argue, although weakly, that there was cause for his failure to appeal the denial of his post-trial motions. In addition, he argues that the various errors at trial amounted to a conviction on the witness intimidation charge for which he is actually innocent. First, the Court addresses Bontkowski's cause and prejudice claim. He presents several reasons for his failure to file an opening brief with the Seventh Circuit including: 1) the U.S. Bureau of Prison Employees violated a stay order of the trial judge by moving Bontkowski from the Metropolitan Correctional Center in Chicago to a prison in Florida precluding him from obtaining the assistance of his attorneys, 2) many of the

extensions from the Seventh Circuit were granted because there was a problem obtaining the transcripts, and Bontkowski filed his opening brief within 90 days of receiving the final volume of the transcripts, 3) The Seventh Circuit judge who dismissed the case, acted improperly and without legal authority, and 4) his brief was filed on August 30, 2001 according to the prisoner's mailbox rule — before the case was actually dismissed.

What Bontkowski's arguments fail to recognize is that he requested a total of eight extensions of time, seven of which were granted. It is possible that some extensions were requested because Bontkowski did not have access to the transcript, but the appellate docket indicates that volumes of the transcript were continuously being produced throughout the time he was asking for extensions. Furthermore, he does not rebut the fact that the Seventh Circuit gave him fair warning that his appeal would be dismissed if he failed to file an opening brief. In the April 26, 2001 order, the court stated that it would grant further extensions only for extraordinary circumstances. In June, the court stated that it would grant no more extensions, and in July the court granted its final extension and stated that "absolutely no further extensions" would be granted. Defendant had fair warning that his appeal would be dismissed. Thus, this Court cannot find that there was cause for not filing a direct appeal.

Moreover, since Bontkowski's appeal was dismissed as untimely, not on the merits, this Court can not make a determination on whether this mistake would have affected the outcome. Therefore, the Court makes no determination on whether Bontkowski suffered

actual prejudice. Bontkowski can not meet the cause and prejudice standard to overcome the default. Thus, Bontkowski's claims are procedurally defaulted due to his failure to file his opening brief in a timely manner.

**2. Bontkowski has not made an appropriate claim that a constitutional violation resulted in the conviction of someone who actually may be innocent.**

Bontkowski's argues in the alternative, that even if he is procedurally barred from asserting his § 2255 motion, his case fits within the narrow range of those in which his continued confinement would result in a fundamental miscarriage of justice. Bontkowski claims that he is innocent of the witness intimidation charge. To allege a fundamental miscarriage of justice claim, a party must assert that there is a constitutional violation that lead to the conviction of someone who is probably innocent. *Precin v. United States*, 23 F.3d 1215, 1219 n.1 (7th Cir. 1994) (indicating that a "narrow exception to the cause and prejudice requirement for a section 2255 petition exists in those exceptional circumstances where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

In order to succeed, Bontkowski must claim both a constitutional violation and actual innocence. Bontkowski meets the second requirement: his brief clearly alleges that the errors at trial resulted in a conviction of an innocent person. Unfortunately, his allegations rest solely on evidentiary errors at trial, not constitutional violations. In the sixth ground for his § 2255 motion, Bontkowski asserts seven trial issues that erroneously led to his conviction. Each is an evidentiary claim within the sound discretion of the trial judge. First, he asserts

that the court erred in failing to order Randall, a witness and the victim, to have a psychiatric examination. Second, he alleges that the court erred in allowing the prosecution to ask Randall leading questions on direct examination in violation of Federal Rule of Evidence 611(c). Third, he alleges that the trial court improperly admitted evidence under the "open door" doctrine. Fourth, he alleges that the trial court improperly permitted Agent Smith to restate hearsay statements of Randall on the stand. Fifth, the trial court improperly permitted Agent Smith to testify to and bolster Randall's credibility. Sixth, the trial court allowed the prosecution to use the perjured testimony of Agent Smith. Finally, he alleges the government improperly withheld the FBI-302 report and Bloomingdale police reports from defense trial counsel — after it had been produced to earlier counsel on the case.

Although Bontkowski alleges that these errors combined amounted to a Fifth Amendment violation, the Court reiterates that each of the claims above is an evidentiary claim, not a constitutional claim; therefore, the proper place to raise each of the above issues was on direct appeal. The absence of a constitutional claim is fatal to Bontkowski's motion. Thus, Bontkowski can not overcome the procedural bar because he has not alleged a constitutional violation leading to the conviction of someone who is probably innocent.[1]

## B. There is No Good Cause For Discovery

Finally, the Court need not determine whether there was good cause for discovery independent of the procedural bar issue. When the discovery requested does not raise a

---

[1] The determinations made by this Court are made for the purposes of the discovery motion only; the Court makes no determination on the ultimate merits of Bontkowski's § 2255 motion.

constitutional issue, there is no good cause for the discovery. *United States v. Davuluri*, No. 02 C 50053, 2002 WL 1033097, at *1 (N.D. Ill. May 21, 2002) (denying a motion for discovery when the discovery requested raised an impeachment issue, not a constitutional issue).

## IV. CONCLUSION

In the exercise of discretion, this Court finds that there is no good cause to allow discovery because Bontkowski has not shown good cause for not taking a direct appeal and because he raises evidentiary and not constitutional claims. For these reasons, **the Court denies Petitioner's motion for discovery pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings.**

**SO ORDERED THIS 15th DAY OF MAY, 2003.**

*Morton Denlow*
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

Edward G. Kohler
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
219 S. Dearborn Street
Suite 500
Chicago, IL 60604

Attorney for Plaintiff

Edward Bontkowski
# 91635-024
Coleman - FCC
Federal Correctional Complex
P.O. Box 1032
Coleman, FL 33521

Pro Se Defendant