

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 6420 (97 CR 295) |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| EDWARD BONTKOWSKI, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The case is before the Court on remand from the Seventh Circuit for consideration of the ineffective assistance of counsel claims in defendant's motion pursuant to 28 U.S.C. § ("section") 2255. For the reasons set forth below, the claims are denied.

### Background

On June 10, 1999, a jury convicted defendant of fraud, tax evasion, tampering with a witness and failing to file tax returns. The fraud counts were based on an advance fee loan scheme, in which defendant's company, First Financial Acceptance Corp., committed to provide millions of dollars in loans to borrowers who paid up-front deposit fees. Defendant told the borrowers that the deposits would be placed in an escrow account and would be refunded if no financing was obtained. In fact, defendant procured no financing and spent the deposits.

The witness tampering count was based on a threat defendant made to William Randall, a long-time friend and employee of defendant. Randall, an admitted alcoholic, told FBI Agent Brian Smith that defendant had threatened to harm Randall's family if he testified against defendant.

Randall also said, however, that he has alcohol-related memory problems and may have dreamed that defendant threatened him.

## Discussion

Defendant contends that he received ineffective assistance from his first lawyer, Lewis Myers, as well as his second lawyer, Paul Bradley, and Bradley's legal assistant, Erika Cunliffe. The only claim defendant raises with respect to Myers and Cunliffe is that they were ineffective for failing to discover or disclose the FBI and police reports about a second threat not to testify against defendant that Randall said he received from Tommy Gonzales. Defendant charges Bradley with that error and with failing to:

(1) impeach Randall with his prior testimony that he may have dreamed the incident with defendant;

(2) to impeach Randall with his grand jury testimony;

(3) ask Randall whether he had hallucinated a fist fight with Robert Martin a few weeks after the incident with defendant, and to subpoena Robert Martin to testify;

(4) establish that Randall learned from the government that he was an officer of defendant's company just a few days before he reported defendant's threat, allowing the jury to infer that Randall invented the threat so the government would not prosecute him for his involvement with defendant's company;

(5) expose as perjury Agent Smith's detention hearing testimony that Randall said defendant told him he was an officer in defendant's company in the course of threatening him;

(6) renew the motion to have Agent Smith excluded from the courtroom during Randall's testimony;

(7) obtain pleadings from the criminal case against Alfred Bregantini, a sham funding source for defendant's corporation, which allowed the government to suggest that defendant knew Bregantini was a con artist;

2

(8) file a written motion to dismiss various counts on the grounds of pre-indictment delay;

(9) object to AUSA's Hoffman's statement in closing that a loan commitment letter was a sworn statement; and

(10) devote enough time to the case, which allowed the government to use perjured testimony.

To prevail on these claims, defendant must prove both that (1) his counsel's performance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." *Strickland v. Wash.*, 466 U.S. 668, 688, 694-95 (1984).

## Errors Attributed to the Defense Team

Defendant faults all three members of his legal team for failing to discover or use the law enforcement reports regarding a threat Randall allegedly received a few months after defendant threatened him. According to the Bloomingdale police, on March 29, 1998 Randall reported that a man whom he believed to be Tommy Gonzales threatened to kill Randall's mother and aunt if he testified against defendant. (*See* Def.'s Mot. Leave File Exs. Referred Def.'s Reply, Ex. 4, 3/29/98 Police Report.) The police said that Randall had been drinking at the time of the alleged threat and "appeared quite intoxicated" when they spoke to him. (*Id.*) When Randall told the story to the FBI a few days later, he said he was no longer sure if the person who threatened him was Tommy Gonzales. (*See* Gov't's Consol. Resp. Def.'s Renewed Mot. New Trial, Ex. A, 4/2/98 FBI Report; *see also* Def.'s Mot. Leave File Exs. Referred Def.'s Reply, Ex. 4, 4/24/98 Police Report (stating that Agent Smith told Bloomingdale police that Randall was no longer sure of the identification).)

3

Moreover, defendant has a Chicago Police Department report that he says shows that Tommy Gonzales was in jail on the day Randall claims he was threatened. (*See* Def.'s Mot. Gov't Produc. Witness Sent. Hr'g, Ex. 1, 10/13/97 Supplementary Report (stating that Thomas Gonzales was taken into custody on October 10, 1997 for armed robbery).) If his counsel had found and used these reports, defendant says, the jury would not have convicted him of the witness intimidation charge.

The Court disagrees. First, the reports defendant submitted do not establish that the man Randall says threatened him was in jail on the day of the alleged threat. The Chicago police report shows that someone named Thomas Gonzales was arrested on October 10, 1997. But there is nothing in the record to suggest, let alone establish, that the Thomas Gonzales who was arrested and the Tommy Gonzales who allegedly threatened Randall are the same man. Moreover, even if it was the same man, the reports do not say that Gonzales was still in jail on March 29, 1998, the date Randall reported the threat to the Bloomingdale police. Because the reports do not support the inference that Randall imagined the threat from Gonzales, defense counsel's failure to unearth them was not unreasonable.

Further, even if counsel should have discovered the reports, defendant could receive section 2255 relief only he was prejudiced by that failure. He was not. Counsel would have used the reports to portray Randall as a mentally-unstable alcoholic unworthy of belief. As the trial record reveals, however, such evidence would have been cumulative. Randall testified that he had consumed "five or six beers" immediately before defendant threatened him and proceeded to get "totally drunk" after defendant left. (5/20/99 Trial Tr. at 1123-24.) Moreover, when the government asked Randall about the threat, he said: "Like I told you earlier, I might have dreamt that, when he showed up in my garage, I might have dreamt all that, got drunk and passed out and just dreamt it." (*Id.* at 1121.)

4

Later, when the government asked him whether defendant had come to his house on the night in question, Randall responded: "If I was dreaming, no. If I wasn't dreaming, yes." (*Id.*)

Randall testified similarly on cross. He admitted that he did not know whether defendant had actually threatened him or whether the threat was just a dream. (*Id.* at 1130.) In fact, when Bradley asked Randall if he had "a doubt about whether [defendant] came to [his] house" Randall replied: "Yes, sir, the more I think about it." (*Id.*) Randall also admitted that he had been "drinking pretty good that night," and that when he drinks, he "think[s] of things that happen, then . . . find[s] out they didn't happen." (*Id.* at 1130-31.) In addition, Bradley offered the testimony of Ted Tucek, who said he had known Randall for more than ten years, had seen Randall drinking hundreds of times and found Randall to be less truthful when he is drinking. (5/27/99 Trial Tr. at 2296-97.) Finally, in closing, Bradley said:

> William Randall, I submit, was demonstrated that he is [sic] a sad, nervous man, clearly has a drinking problem. And he testified he thinks, sometimes thinks things have happened when they haven't.
>
> They are asking you to convict this man of witness intimidation based on the testimony of a man who cannot distinguish reality from fantasy and hallucination. The fact that Agent Smith repeated what he believes Mr. Randall said to him does not add one scintilla of evidence to this case. Because if all you are doing is repeating a hallucination, it doesn't make it true. If all you are doing is repeating a drunken lie, it doesn't make it true.

(6/10/99 Trial Tr. at 2505-06.) In short, there was ample evidence from which the jury could infer that Randall was an incredible alcoholic without the reports about the second alleged threat. Because those reports would have been cumulative impeachment evidence, defendant was not prejudiced by his lawyers' failure to discover or use them.

### Errors Attributed Solely to Bradley

The next error defendant identifies is Bradley's failure to impeach Randall with prior testimony that he may have dreamed defendant's threat. As discussed above, however, Randall testified both on direct and cross-examination that the threat may have been a dream, and Bradley argued that it was in his closing. Bradley's failure to quote from Randall's prior testimony to make that point did not, therefore, prejudice defendant.

Defendant also says Bradley should have recalled Randall "for the purpose of exposing Randall's . . . acts of perjury" before the grand jury. (Mot. at 35.) Defendant does not, however, identify the alleged acts of perjury or provide the portions of Randall's grand jury testimony to which he refers. In other words, defendant has given the Court nothing to support this claim. Absent some evidentiary support, this claim does not merit section 2255 relief. *See Mitchell v. United States*, 359 F.2d 833, 837 (7th Cir. 1966) ("We must repeat what [we] said . . . concerning petitions under § 2255: specific facts should be alleged to support the claim; vague conclusional charges are insufficient to raise an issue which demands inquiry; and petitioner must show that he has proof of his allegations beyond his unsupported assertions.").

Defendant fares no better with his next claim, that Bradley should have asked Randall about a fist fight he had with Robert Martin a few weeks after defendant threatened him, and subpoenaed Martin to testify on the issue. If Bradley had done those things, defendant says, Martin would have testified that there was no fight, and Randall would have been exposed as a liar.

Even if Bradley should have raised this issue, his failure to do so did not prejudice defendant. The most powerful evidence concerning Randall's credibility was his own admission that he

6

hallucinates when he drinks. Martin's testimony may have supported that admission, but it would have done no more damage to Randall's credibility than Randall had done himself.

Defendant also argues that Bradley should have established that Randall learned from the government that he was an officer of defendant's company just a few days before he reported defendant's threat. Had Bradley done so, defendant says, the jury would have inferred that Randall invented the threat to curry favor with the government so he would not be prosecuted for his involvement with defendant's company.

The problem with defendant's argument is that the testimony he says Bradley should have used to make this point is highly equivocal. At trial, Randall said that he thought the government told him he was an officer around the time of the grand jury, but he "[did]n't really recall." (5/20/99 Trial Tr. at 1142.) That is hardly an assertion begging to be impeached.

Moreover, the testimony with which defendant says Randall should have been impeached, which is from a hearing that occurred months after the grand jury proceedings but only days after the threat, is even more ambiguous. In that hearing, Randall was asked and answered as follows:

> Q: And, sir, you are listed on the corporate records as an officer of the company, is that correct?
>
> A: After he told me that, yes, sir, I found that out. I mean, he didn't tell me that. Recently, when you told me in your office.
>
> Q: So at the time [the fraud was] going on, you didn't realize you were an officer of the company?
>
> A: No. I was just a peon, sir.

(1/29/98 Detention Hr'g Tr. at 32.) One inference from this testimony, as defendant asserts, is that Randall learned he was an officer of defendant's company just days before he reported the threat.

The more plausible, inference, however, is that Randall used "recent" to mean at the time of the grand jury proceedings as opposed to the time of defendants' crimes, which occurred as many as eight years earlier. In short, it was completely reasonable for Bradley not to try to build an impeachment on such a weak foundation.

Defendant's next claim is in the same vein. He says Bradley should have exposed as perjury Agent Smith's testimony in the 1998 detention hearing that Randall said defendant told him he was an officer in the company in the course of threatening him. The falsity of that testimony, defendant says, is established by Randall's testimony that he learned he was an officer in defendant's company from AUSA Kohler before the grand jury proceedings.

The fact that Smith testified differently from Randall does not, however, prove that he lied. It is at least as likely that Smith was mistaken or, given Randall's admitted alcoholism and memory problems, that Randall was mistaken or lied. Given the other, more plausible, explanations for the testimony discrepancy, it is highly unlikely that the jurors would have inferred from it that Smith had lied, even if Bradley had urged that inference upon them. Thus, Bradley's failure to do so was not unreasonable.

Nor was Bradley's failure to renew his motion to have Smith excluded from the courtroom during Randall's testimony. Federal Rule of Evidence 615 permits the Court, on its own motion or that of a party, to exclude witnesses from court so they cannot hear the testimony of other witnesses. FED. R. EVID. 615. That rule does not, however, "authorize exclusion of . . . an officer or employee of a party which is not a natural person designated as its representative by its attorney." FED. R. EVID. 615(2). Agent Smith was the government's representative and, as such, was entitled to be in the courtroom. *See United States v. Adamo*, 882 F.2d 1218, 1235 (7th Cir. 1989) (stating that FBI

agent, as representative of the government, was "exempt from sequestration" under Rule 615 and, "though he is also a witness, may be designated to sit at the government counsel's table").

Next, defendant argues that Bradley should have presented to the jury evidence from the criminal case against Alfred Bregantini and testimony from the AUSA who prosecuted it. Defendant says that evidence would have shown that the government charged Bregantini with defrauding defendant's company and defused its argument that defendant knew Bregantini was a con artist. But defendant did not submit any of the documents to which he refers or an affidavit from the AUSA who prosecuted Bregantini to back up the claim. Absent evidentiary support, this claim fails. *See Mitchell*, 359 F.2d at 837.

Defendant also faults Bradley for failing to file a written motion to dismiss various counts on the grounds of pre-indictment delay, as Judge Bucklo had instructed. The record shows, however, that Bradley did file a written motion on that issue. (*See* Def.'s Post-Trial Mot. at 1 & Reply Supp. Def.'s Post-Trial Mot. at 1-2.) Therefore, defendant's complaint on this score is unfounded.

Defendant also contends that Bradley was ineffective for having failed to object to AUSA Hoffman's assertion in closing that loan commitment letters signed by defendant were sworn statements. Even if Bradley should have objected to that assertion, his failure to do so was harmless. The damning aspect of the commitment letters was not that they had been falsely signed under oath, but that they promised borrowers non-existent financing. The objection defendant says Bradley should have made would have done nothing to blunt the impact of those letters.

Finally, defendant complains that Bradley did not devote enough time to his case, a failing that allowed the government to use perjured testimony to secure his convictions. As defendant admits, he raised the perjury claim in his *pro se* supplemental motion for a new trial, a motion that

Judge Bucklo denied. (*See* Mot. at 41; 5/1/00 Min. Order (denying defendant's motion).) As Judge Bucklo's ruling reflects, defendant's perjury claim is baseless. Thus, Bradley was not ineffective for failing to raise it.

## Conclusion

For the foregoing reasons: (1) the ineffective assistance of counsel claims in defendant's section 2255 motion [doc. no. 1] are denied; (2) defendant's renewed motion for an evidentiary hearing [doc. no. 80] is denied; and, (3) because the Court did not rely on them in deciding this motion, defendant's motion to strike certain allegations made by the government [doc. no. 76] is stricken as moot. This case is terminated.

**SO ORDERED.** ENTERED: 6/27/06

HON. RONALD A. GUZMAN
**United States District Judge**